F I L E D
**United States Court of Appeals
Tenth Circuit**

**JAN 15 1999**

**PATRICK FISHER**
Clerk

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

RICHARD ROSTER,

      Defendant-Appellant.

No. 98-1203
(D.C. No. 97-CR-71-D)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **BRORBY**, **EBEL** and **LUCERO**, Circuit Judges.

Defendant-Appellant Richard Roster appeals from his sentence on a single

count of conspiracy to possess with intent to distribute cocaine. He contends that

the district court erred in awarding him a two-level firearms enhancement under

U.S.S.G. § 2D1.1(b)(1). We affirm.

---

[*]After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f) and 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This Order and Judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

## BACKGROUND

Richard Roster pled guilty in February 1998 to conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846, on charges stemming from a drug transaction that occurred on January 11, 1997, at a Chili's restaurant in Colorado Springs.[1] On that day, Roster and three friends (Andrew McCardell, Mauricio Roman, and Israel Reyes) arrived at the restaurant to assist another friend, Christopher Valle, in a deal to sell more than 400 grams of cocaine to two undercover agents.[2] Roster and his friends sat a few tables away from Valle and the agents. At one point, Reyes and Roman left to check the parking lot for police surveillance while Roster and McCardell remained in the restaurant. Reyes also checked in on Valle as the transaction was carried out in the men's restroom. After eating, Roster and McCardell moved to the bar section of the restaurant and drank some beers.

Roster testified at his sentencing hearing that although he did not directly participate in the drug transaction, he "was there," and he "knew what was going on." (Sent. Tr. at 11.) He testified that he personally did not have any weapon on him during the deal, but when asked by his own counsel whether he was aware

---

[1]Roster and five co-defendants were indicted on drug and firearm charges on March 13, 1997. Roster was named in only one of six counts in the indictment.

[2]Roster concedes that he had an ownership interest in the cocaine supplied by Valle in the deal.

that his companions had guns during the transaction, Roster testified that he assumed they did, even though he did not see any weapons until they left the restaurant and returned to their vehicle.  (See id. at 14.)  At that point, he noticed that Roman, McCardell, and Valle all had guns.  (See id. at 15.)

After establishing a base offense level of 24 for the amount of cocaine at issue, the district court awarded Roster a two-level firearms enhancement under U.S.S.G. § 2D1.1, "because at least one firearm was present during the transaction on January 11, 1997."  (Id. at 37.)  The court found that the enhancement applied even if Roster did not personally possess a weapon, because Roster was aware that Roman, McCardell, and Valle had weapons in connection with the deal.  (See id.)

## DISCUSSION

We review a district court's legal interpretation of the Sentencing Guidelines de novo, but we review the court's factual determinations at sentencing for clear error. See United States v. Roberts, 980 F.2d 645, 647 (10th Cir. 1992).

Section 2D1.1(b)(1) of the Sentencing Guidelines states: "If a dangerous weapon (including a firearm) was possessed, increase by 2 levels."  The commentary to this provision adds:

> The enhancement for weapon possession reflects the increased
> danger of violence when drug traffickers possess weapons.  The

adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with this offense.

U.S.S.G. § 2D1.1(b)(1), comment. (n.3).

The government bears the initial burden of proving possession by a preponderance of the evidence. See Roberts, 980 F.2d at 647. This burden may be met "even if there is no evidence other than proximity to suggest that the gun was connected to the offense." Id. Once the government meets its burden, the defendant may escape the enhancement only by proving the exception established in the commentary to § 2D1.1 – that it is "clearly improbable" that the weapon was connected with the offense. See id.

Roster has not made any showing that it was clearly improbable that the weapons were connected with the offense. Instead, Roster submits that the enhancement is inapplicable because there was no evidence that he personally possessed any weapon during the deal or that he had actual knowledge of his compatriots' possession of weapons at the time the transaction took place.

Both contentions are unavailing. First, personal possession of a firearm is not necessary to trigger application of § 2D1.1(b)(1). See United States v. Smith, 131 F.3d 1392, 1400 (10th Cir. 1997) (upholding firearms enhancement based on loaded weapons found in methamphetamine lab where defendant worked, even though none was registered to defendant or bore his fingerprints), cert. denied, 118 S. Ct. 1109 (1998). Second, the sentencing court may "'attribute to a

defendant weapons possessed by his codefendants if the possession of weapons was known to the defendant or reasonably foreseeable by him.'" Id. (quoting United States v. McFarlane, 933 F.2d 898, 899 (10th Cir. 1991)).

The preponderance of the evidence before the sentencing court was sufficient to conclude that weapons were present during, and connected to, the drug transaction. Roster offered no evidence to the contrary, and conceded at his sentencing hearing that he assumed that his friends were carrying guns at the restaurant to back up Valle during the deal. Because it was reasonably foreseeable to Roster that his cohorts possessed weapons during the sale, the district court did not err in attributing to Roster weapons possessed by his codefendants. The court's application of the two-level enhancement under § 2D1.1(b)(1) was proper.

AFFIRMED.

The mandate shall issue forthwith.

ENTERED FOR THE COURT


David M. Ebel
Circuit Judge